*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0078p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.

LANDO V. TATE,

> *Defendant-Appellant.*

No. 06-6529

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 05-20050—Samuel H. Mays, Jr., District Judge.

Argued: December 5, 2007

Decided and Filed: February 15, 2008

Before: GUY, MOORE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Michael J. Stengel, STENGEL LAW OFFICE, Memphis, Tennessee, for Appellant. E. Greg Gilluly, Jr., ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Michael J. Stengel, STENGEL LAW OFFICE, Memphis, Tennessee, for Appellant. E. Greg Gilluly, Jr., ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

GILMAN, J., delivered the opinion of the court, in which GUY, J., joined. MOORE, J. (pp. 11-12), delivered a separate dissenting opinion.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. In August of 2006, Lando V. Tate was convicted by a jury on one count of being a felon in possession of a firearm. The Sentencing Guidelines range was calculated to be 84 to 105 months of imprisonment, but the government moved for an upward departure on the basis that Tate's criminal history category failed to accurately reflect the seriousness of his prior criminal conduct. It further argued that, based upon the 18 U.S.C. § 3553(a) factors, the statutory maximum of 120 months' imprisonment was the more appropriate punishment. At the sentencing hearing, the district court declined to impose an upward departure under the Guidelines, but did impose the statutory maximum sentence of 120 months' imprisonment based on the § 3553(a) factors. Tate now appeals his sentence. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1

# I. BACKGROUND

## A.     Tate's conviction

Tate was indicted in August of 2005 on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  Pursuant to a plea agreement, Tate pled guilty to the charge in October of 2005.  He was originally represented by an assistant federal defender, but after Tate filed a motion for new counsel and the federal defender informed the district court that Tate had been uncooperative and refused to meet with him, the court appointed attorney Robert Irby to represent Tate.  A Presentence Report (PSR) was prepared, after which both parties filed sentencing memoranda.  The sentencing hearing was set for January of 2006, but based on Tate's repeated requests for more time to prepare, the district court continued the hearing several times.

When the sentencing hearing finally took place in May of 2006, Tate stated that he wished to withdraw his guilty plea.  The district court permitted Tate to withdraw his plea and then set the trial date for June of 2006.  At Tate's request, the district court later reset the trial date.  Tate's case finally proceeded to trial in August of 2006 and, after a two-day hearing, the jury convicted him on the charge in the indictment.

Meanwhile, despite being represented by counsel, Tate submitted a series of pro se filings to the court between April and October of 2006.  These filings, and Tate's statements to the district court, were couched in the language and concepts found in the Uniform Commercial Code (UCC).  Irby filed a motion for a psychological examination in June of 2006, explaining that Tate had been saying "strange things" to Irby and to the district court and that Irby did not know how or why Tate was making the UCC-based pro se filings.  In that motion, Irby further stated that he was "searching to find out how to help" Tate, and that Irby "need[ed] to have [Tate] evaluated to know his mental status[.]"  But that motion was withdrawn less than a week later without explanation.

Also during this time, after Tate's initial sentencing hearing but before his trial, Irby filed a motion to withdraw as Tate's counsel.  Irby reported that Tate had refused to accept his advice and that he was "unable to effectively deliver legal services" to Tate because their attorney-client relationship "no longer exist[ed], or else never existed."  After conducting a hearing on the motion and listening to Irby discuss Tate's refusal to cooperate, the district court denied Irby's motion to withdraw.

## B.     Tate's sentencing

### 1.     *Presentence reports*

The probation office initially prepared a PSR in December of 2005 after Tate pled guilty to the felon-in-possession-of-a-firearm charge.  Tate's criminal history category was calculated to be VI, based on 36 criminal history points.  He was assigned a base offense level of 20 because he had a prior felony conviction that qualified under the Sentencing Guidelines as a crime of violence.  Two points were added because the firearm was stolen.  Three points were then subtracted because Tate had accepted responsibility, which meant that the adjusted total offense level was 19.

The PSR calculated the Guidelines range at 63 to 78 months' imprisonment.  In addition to the Guidelines-range calculation, the PSR discussed a possible upward departure under USSG § 4A1.3 "if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past conduct."  The PSR also noted that, of Tate's 36 criminal history points, 5 were noncountable because the maximum under § 4A1.1(c) (providing a maximum of four points for prior sentences not captured by §§ 4A1.1(a)-(b)) had been reached.

After Tate's trial and conviction in August of 2006, the original PSR was revised. The only substantive difference between the revised PSR and the original PSR was that, because Tate had gone to trial, the revised version removed the three-point reduction for acceptance of responsibility. His final offense level was therefore changed to 22, causing the Guidelines range to increase to between 84 and 105 months of imprisonment. The section dealing with a possible upward departure under § 4A1.3 remained the same, as did the recitation of Tate's criminal history and offender characteristics.

In response to the revised PSR, the government filed a sentencing memorandum that requested an upward departure under § 4A1.3, emphasizing that Tate "has almost three times the points necessary to place him in the highest Criminal History Category." The government also requested that the district court sentence Tate to the statutory maximum of 120 months' imprisonment based on the factors set forth in 18 U.S.C. § 3553(a).

## 2. *Sentencing hearing*

Tate's sentencing hearing took place in September of 2006. The district court asked whether Irby and Tate had received copies of the PSR and whether they had discussed it. Irby explained that he had given Tate a copy, although Tate claimed that he had not had an opportunity to review the document. The court made a finding that Tate had had the opportunity to review the PSR, which apparently refers to the revised PSR prepared a month before the hearing. Irby also noted that he and Tate had "discussed the [original PSR] at length . . . months ago" and that they had "discussed the Sentencing Guidelines[,] . . . how they would apply to his case, and possibilities at sentencing." After being given an opportunity to object to the facts and the Guidelines calculations contained in the revised PSR, both parties said that they had no objections.

The district court and the attorneys then engaged in a lengthy discussion regarding Tate's criminal history and the government's motion for an upward departure under USSG § 4A1.3. Tate was also given an opportunity to address the court. He made a lengthy statement employing language sounding in commercial law, and presented the court with documents that, according to Irby's understanding, were intended to put both Irby and the government's counsel into involuntary bankruptcy.

During the government's argument, it renewed its request that the district court either depart upward from the Guidelines range or sentence Tate to the statutory maximum sentence based on the § 3553(a) factors. The government specifically pointed to the nature of the charged offense and to Tate's criminal history in support of its argument that Tate's sentence should be enhanced. In addition, the government noted that "the defendant's prior attempts at rehabilitation . . . have failed." It argued that, for those reasons combined with the other factors under § 3553(a), Tate "should be sentenced to 120 months."

After noting that the Guidelines are only one factor to consider under § 3553(a), the district court denied the motion for an upward departure under § 4A1.3. The court explained:

> I'm going to deny it because I think I'll have a more accurate fair adjustor, a more reasonable result, if I consider all of these factors together rather than trying to isolate the criminal history. I think that's a better way to do it, because ultimately I have to have a sentence that satisfies the requirements of [§] 3553.

At that point, the district court engaged in a detailed discussion that applied the § 3553(a) factors to Tate's case. It focused with particularity, although not exclusively, on Tate's criminal history. The court noted that "the uncontested factual narrative" of Tate's history demonstrated "a pattern that includes physical violence, attempt to avoid arrest, situations that risk the lives of individuals, . . . [and] a general lack of respect for the law."

Moreover, the court found that Tate had exhibited "a continuing desire to avoid the consequences of his conduct. Mr. Tate is educated, he is intelligent, mentally aware." In discussing what the court termed "a piece of the prior conduct, contempt for law, [and] contempt for law enforcement," it concluded that, by making UCC-based arguments, Tate had "chosen a course that is obstructionist and used in bad faith." The court further stated: "Nothing . . . indicates that Mr. Tate is going to do anything but as soon as he is released, go out and offend again." Noting that "what drives this case in my judgment is the need to protect the public," the court determined that the Guidelines range did not adequately satisfy this need or the other factors under § 3553(a). It therefore imposed the statutory maximum sentence of 120 months' imprisonment followed by a three-year term of supervised release.

After imposing the sentence, the district court asked the parties if there were any objections not yet made. The attorneys answered in the negative, but Tate stated: "I would like the record to reflect I accept your offer of judgment for 120 months. I still request full settlement and closure of this account." After responding to Tate's request for a copy of the judgment, the court adjourned the hearing.

## II. ANALYSIS

### A.      Standard of review

We typically review the district court's factual findings under the clearly erroneous standard and its conclusions of law de novo. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005). The overall sentencing determination is reviewed for reasonableness. *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007). When, however, a party is given an opportunity to object to a sentence in the district court and "does not clearly articulate any objection and the grounds upon which the objection is based," we review the objections raised on appeal under the plain-error standard. *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004); *see also* Fed. R. Crim. P. 52(b).

In the present case, after pronouncing the sentence, the district court asked Tate's counsel: "[D]o you know of any reason, other than any reason you have already argued why the sentence should not be imposed as stated?" This satisfied the district court's obligation under *Bostic*. *See Bostic*, 371 F.3d at 872 (requiring district courts, "after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised"). Tate's counsel responded that there were no objections.

Any objections not raised by Tate at sentencing are therefore subject to plain-error review. Plain-error review requires us to determine whether: (1) there was an error, (2) the error was "obvious or clear," (3) the error affected the defendant's substantial rights, and (4) "this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006).

### B.      Objection based on Rule 32(i)(1)(A)

Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure provides that "[a]t sentencing, the court . . . must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Although we require literal compliance with Rule 32(i)(1)(A), *United States v. Mitchell*, 243 F.3d 953, 955 (6th Cir. 2001) (addressing former Rule 32(c)(3)(A), the precursor to Rule 32(i)(1)(A)), "[a] trial judge need not expressly ask the defendant if he and his counsel have read and discussed the report." *United States v. Osborne*, 291 F.3d 908, 910 (6th Cir. 2002). "[I]nstead, the court need only *somehow* determine that defendant and counsel have had an opportunity to read and discuss the [presentence report]." *Id.*

(emphasis and second alteration in original) (quoting *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988)).

Tate claims that the district court not only failed to ensure that he and Irby had discussed the revised PSR, but that the court actually verified the opposite. Because the sentencing hearing took place in September of 2006, Irby's statement to the court that he and Tate had talked about the PSR "months ago" demonstrates that they had not discussed the revised PSR, which was prepared only a month before the hearing. Tate also points to the fact that he explicitly told the district court that he had not reviewed the PSR, which shows that he and his attorney had discussed only the original PSR, not the revised PSR. He therefore contends that the district court violated Rule 32(i)(1)(A) and that, under *Mitchell*, 243 F.3d at 955, we are required to remand the case for resentencing.

In response, the government argues that the record as a whole shows that the district court did not violate Rule 32(i)(1)(A). It first notes that Irby acknowledged that Tate had previously received a copy of the revised PSR. The government also urges us to consider the fact that both the district court and Irby were well-acquainted with Tate's refusal to cooperate with his attorney throughout the proceedings. Indeed, it explains that Tate had been so unwilling to cooperate that Irby had requested to withdraw from Tate's case before it went to trial. During the colloquy regarding the review of the PSR, Irby told the court that Tate had "protested to me today the fact that I represented him in a trial." These facts, the government contends, show that Tate had the opportunity to read and discuss the revised PSR with Irby, but that Tate had made an affirmative choice not to do so.

With regard to the appropriate standard of review for this claim, we respectfully disagree with the dissent that Tate's statement that he had not read the PSR constitutes an objection sufficient to avoid plain-error review. *See Bostic*, 371 F.3d at 871 ("A party must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection."). Both Tate and Irby were given multiple opportunities to make objections during sentencing, and neither contested the district court's decision to proceed with sentencing despite Tate's statement that he had not reviewed the PSR in his possession. Because we conclude that Tate's statement did not "constitute a sufficiently articulated objection," we review his claim under the plain-error standard. *See id.*

Our review of the record does not necessarily show a violation of Rule 32(i)(1)(A), but does leave substantial doubt as to what exactly the district court verified. On the one hand, the court did not refer to the revisions made to the PSR in August of 2006 and, in its colloquy with Tate's counsel, it did not specifically ask whether Tate had in fact discussed the revised PSR with Irby. But the record, when viewed as a whole, does support the inference that Tate had had an opportunity to read and discuss the revised PSR with Irby, and that he deliberately chose to forego that opportunity.

We need not determine, however, whether the district court actually failed to comply with Rule 32(i)(1)(A) because, even if there was an obvious error, it did not affect Tate's substantial rights or affect the fairness, integrity, or public reputation of the proceedings. *See Gardiner*, 463 F.3d at 459. Tate's own attorney noted that he and Tate had discussed the original PSR "at length," and that they had "discussed the Sentencing Guidelines and how they would apply to his case, and possibilities at sentencing." The defense even filed a sentencing memorandum addressing the original PSR. And as the government correctly points out, the only difference between the original PSR and the revised PSR was that the revised version removed the downward departure for acceptance of responsibility in light of Tate's decision to withdraw his guilty plea and proceed to trial. This case is therefore different than both *Mitchell* and *Osborne* because there *is* "evidence on the record that the defendant and his counsel have read and discussed" the original PSR, which was materially the same as the revised PSR. *See Osborne*, 291 F.3d at 910.

Irby, moreover, acknowledged that he had reviewed the revised PSR and had given a copy to Tate. He also noted that he did not have any objections to the facts or the Guidelines range set forth in the PSR. Given that he did not later object to the newly calculated Guidelines range, he was presumably referring to the revised PSR. Tate has not argued that he was eligible for a downward adjustment for acceptance of responsibility, and the record shows that the court did not rely on any inaccurate information in sentencing Tate. We acknowledge that, as the dissent suggests, the district court could have adjourned the hearing to give Tate and Irby time to review the revised PSR. But we think that this would have been an exercise in futility under the circumstances, given that the record makes clear that Tate had refused to further cooperate with Irby. For these reasons, we conclude that any deviation from Rule 32(i)(1)(A) on the part of the district court did not constitute plain error.

## C.       Objection under Rule 32(h)

Tate also claims that the district court violated Rule 32(h) of the Federal Rules of Criminal Procedure by imposing an above-Guidelines sentence "without furnishing notice" to him. He did not raise any objection on the basis of Rule 32(h) during sentencing. At the outset, we note that the Supreme Court has recently granted certiorari on the question of whether Rule 32(h) "has any continuing application in light of *United States v. Booker*, 543 U.S. 220 (2005)." *See* Question Presented, *Irizarry v. United States*, No. 06-7517, *available at* http://www.supremecourtus.gov/qp/06-07517.pdf. Nevertheless, we will consider Tate's Rule 32(h) objection based on the law as it has developed up to this point.

We recognize that there is a disagreement as to "whether harmless or plain error review is appropriate when the party challenging Rule 32(h) notice on appeal does not object in the district court." *United States v. Matheny*, 450 F.3d 633, 637 n.2 (6th Cir. 2006) (applying de novo review, concluding that there was no Rule 32(h) error, and therefore declining to resolve the conflict between *United States v. Meeker*, 411 F.3d 736, 744 (6th Cir. 2005) (applying plain-error review to a Rule 32(h) violation), and *United States v. Williams*, 97 F. App'x 613, 614 (6th Cir. 2004) (applying de novo review to a Rule 32(h) violation)).

This disagreement, however, is more of a perceived conflict than an actual one because *Williams* is an unpublished case and thus not binding on future panels. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 507 (6th Cir. 2007). *Williams*'s analysis, moreover, is diminished by the fact that it was decided before the rule articulated in *Bostic*. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004) (requiring a party in a sentencing hearing to "clearly articulate any objection and the grounds upon which the objection is based" in order to avoid "plain error review on appeal").

Moreover, to the extent that *Matheny* creates a conflict with *Meeker* by applying de novo review to a Rule 32(h) challenge that was not raised in the district court, we are bound by *Meeker* because it was decided first. *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001) ("[W]hen a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case."). For these reasons, we will apply plain-error review to Tate's argument that the district court violated Rule 32(h).

Rule 32(h) provides that

[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

This court has held that Rule 32(h) "applies equally to [Guidelines departures] and § 3553(a) variances." *United States v. Cousins*, 469 F.3d 572, 580 (6th Cir. 2006). Nevertheless, "[a]ll that is required is reasonable notice; what constitutes reasonable notice will vary depending on the circumstances of the particular case." *United States v. Ragland*, 226 F. App'x 507, 510 (6th Cir. 2007) (citing *Meeker*, 411 F.3d 736). "If the issues are particularly complicated or the ground for upward departure is one that was not reasonably contemplated by the defendant, then more time is necessary. In contrast, if cumulative evidence otherwise exists in the record, then the defendant is already on notice and less preparation time is necessary." *Meeker*, 411 F.3d at 744 (citations omitted).

Tate contends that although he had notice that his sentence might be enhanced under USSG § 4A1.3, the district court erred by failing to give him proper notice that it might "consider a sentence outside the applicable advisory range for any other reason." He has not persuaded us, however, that the district court plainly erred in this regard. As a preliminary matter, Tate has not shown that the court actually failed to provide reasonable notice as required by Rule 32(h).

Tate contends that he did not receive notice that the district court might depart from the Guidelines. But the government submitted a sentencing memorandum prior to the hearing in which it requested "that the court sentence the defendant to 120 months because a 120-month sentence is the appropriate sentence, one that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)." The present case is therefore distinguishable from *Cousins*, in which "the district court imposed a two-month upward variance from the Guidelines range, despite the fact that neither the government nor the PSR had recommended such a variance." 469 F.3d at 580.

Moreover, the government points to numerous instances in the record reflecting various proceedings at which Tate was informed that the statutory maximum was 120 months and that the district court could impose a sentence outside the Guideline range. *See United States v. Quinlan*, 473 F.3d 273, 280 (6th Cir. 2007) (summarily dismissing Quinlan's argument based on Rule 32(h) because the government had repeatedly "put Quinlan and the court on notice that it was recommending a sentence of 120 months"). Tate's generalized argument that he did not have notice of the possibility that he might receive the statutory maximum sentence is therefore without merit.

In the alternative, Tate directs our attention to the language in Rule 32(h) requiring that the notice "specify any ground on which the court is contemplating a departure." He argues that because the district court "relied on [the fact that Tate had made arguments based upon the UCC] to impose a sentence exceeding the advisory guideline range," the court erred by failing to give notice of its intent to enhance his sentence for this reason. Tate thus contends that if he had been aware that the district court was going to rely on his UCC arguments to punish him, he would have proceeded differently by ensuring that the mental evaluation Irby requested in June of 2006 was actually completed.

But we are not persuaded that Tate's UCC arguments played any significant role in the imposition of his sentence. The district court, in evaluating the § 3553(a) factors, discussed a wide range of considerations, of which Mr. Tate's "obstructionist" behavior received only minor mention. In fact, most of the court's analysis centered on Tate's extensive criminal history, all of which was detailed in both PSRs. *See United States v. Matheny*, 450 F.3d 633, 640 (6th Cir. 2006) (rejecting the defendant's argument that the PSR was inadequate in failing to explain the rationale for an upward departure where the facts upon which the departure was based were described therein). Tate's assertion that the district court erred by failing to give him notice that it would enhance his sentence because of his UCC arguments therefore mischaracterizes not only the record, but also the extensive reasoning that the court provided for enhancing his sentence under § 3553(a).

In any event, even if we were to conclude that the district court violated Rule 32(h), Tate has not shown that this would entitle him to relief under the plain-error standard. *See Cousins*, 469 F.3d at 580 (explaining that the failure to provide notice under Rule 32(h) constituted an obvious error, but nevertheless required the defendant to establish the error had "an effect on his substantial rights, and a serious impact to the fairness, integrity, or public reputation of the judicial proceeding" (internal quotation marks omitted)). Tate's extensive criminal history provided the basis for an upward departure under § 4A1.3, and Tate concedes that he "was prepared to object and successfully rebuff the government's request for an upward departure" on these grounds. Thus Tate's contention that he "may have rebutted the factual basis for a variance" if he had had additional notice is insufficient to meet the plain-error standard. *See Ragland*, 226 F. App'x at 511 (finding no prejudice where the defendant "failed to suggest how he would have proceeded differently had he been given greater notice"); *Meeker*, 411 F.3d at 746 (finding no prejudice where "the evidence supporting an upward departure was essentially irrebuttable").

Tate's argument that he would have proceeded with a mental evaluation is likewise unavailing because, as discussed above, the district court referred to Tate's "obstructionist" behavior only briefly in its evaluation of the § 3553(a) factors. He was also given ample notice that the district court might use these factors to impose an above-Guidelines sentence. Thus the district court's reference to Tate's UCC-based arguments did not prejudice his ability to make his case for a lower sentence under § 3553(a).

Tate, moreover, has failed to persuade us that any alleged error impacted the fairness, integrity, or public reputation of the proceedings. To the contrary, remanding this case would essentially punish the district court for its thorough attention to the facts discussed in the PSR and its detailed explanation for the sentence it chose to impose. We therefore reject Tate's challenge to his sentence under Rule 32(h).

**D.     Reasonableness of Tate's sentence**

The final argument advanced by Tate in challenging the district court's judgment is that the above-Guidelines sentence is unreasonable. Tate emphasizes the fact that the district court imposed "the most severe 'variance' possible," but the bulk of his argument centers once again on the fact that the district court mentioned Tate's UCC arguments in the course of discussing the § 3553(a) factors. According to Tate, "[a] review of the entire record clearly reveals that the district court's frustration with Mr. Tate, expressed on the record months before trial, caused a knee jerk reaction."

This court reviews sentences for both procedural and substantive reasonableness. *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007). Aside from the objections Tate raised based on Rule 32, discussed above, Tate does not challenge the procedural reasonableness of the sentence imposed by the district court. We will therefore limit our reasonableness review to whether the above-Guidelines 120-month sentence was substantively reasonable.

The touchstone for our review is whether the length of the sentence is reasonable in light of the § 3553(a) factors. *See United States v. Cherry*, 487 F.3d 366, 370 (6th Cir. 2007). A reviewing court will find that a sentence is substantively *unreasonable* "where the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (alteration in original) (internal quotation marks omitted).

Although this court's presumption of reasonableness applies only to sentences inside of the Guidelines range, there is no presumption *against* a sentence that falls outside of the range. *United States v. Smith*, 474 F.3d 888, 892 (6th Cir. 2007). This court has previously applied a form of

proportionality review to sentences outside the Guidelines range, so that "the greater the variance from the range, the more compelling the justification for variance must be." *Id.* The Supreme Court, however, recently held that "while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 591 (2007).

Tate argues that his sentence is substantively unreasonable because "[t]he district court simply selected the maximum sentence arbitrarily and base [sic] the sentence on Mr. Tate's assertion of a theory the district court considered nonsense, rather than a balanced, reasoned analysis under § 3553(a)." The government counters by pointing out that, to the contrary, "[t]he court considered the arguments of the parties. The court considered the position papers of the parties. The court considered statements by the defendant. The court also considered the [PSR]. . . . The court considered, in detail, the § 3553 factors."

Our thorough review of the sentencing transcript convinces us that the government's position is the correct one. As with his argument under Rule 32(h), Tate's contention that the district court reacted in a "knee jerk" fashion to his UCC-based arguments finds no support in the record. The transcript demonstrates that the district court engaged in a thoughtful and painstakingly detailed review of how the § 3553(a) factors applied to Tate's case. And the fact that the district court alluded to Tate's arguments under the UCC, which it mentioned only in support of its conclusion that Tate had continuously refused to accept responsibility for his actions, does not undermine our conclusion that the court carefully weighed the § 3553(a) factors in determining an appropriate sentence.

We believe that this court's decision in *Smith*, 474 F.3d 888, is instructive. The district court in *Smith*, unlike the district court in the present case, chose to impose an upward departure pursuant to USSG § 4A1.3 rather than a variance under § 3553(a). This court, however, explained that "our review of a district court's upward departure to a higher offense level should mirror our analysis of its variance from the guidelines range. Since a district court can employ either and arrive at the same result, we should review both methods with the same scrutiny." *Id.* at 893. Our court then concluded that the district court's sentence was substantively reasonable because

> the district court not only explained the reasons it was departing upward but it also provided an analysis of the § 3553(a) factors. It examined each of the prior convictions on Smith's record. It concluded, based on this review, that Smith "has a history of drug abuse, possessing dangerous firearms, and acts of violence against women." It explained that it chose the sentence it did because Smith "has shown utter disregard for the law throughout the course of his life." It recognized that the sentence would keep Smith off the street and that that alone was a benefit to the safety of the community. . . .
>
> We do not require a rote recitation of § 3553(a) factors but rather an explanation of why the district court chose the sentence it did. The court below examined many of the § 3553(a) factors and attached to them a not unreasonable weight. We conclude that it was within its discretion to impose the sentence it did.

*Id.* at 894 (citations omitted).

The circumstances surrounding the sentencing in *Smith* are remarkably similar to those involving Tate. In the present case, the district court specifically declined to impose an upward departure under § 4A1.3 because it believed that it could obtain a fairer result by weighing the § 3553(a) factors. The court's explanation of its balancing of these factors supports its decision to

proceed in that manner. Indeed, far from imposing an arbitrary sentence or placing an unreasonable amount of weight on any one factor, the district court undertook a careful analysis of both the facts and the law. As the district court explained:

> [Tate has] lived a life of crime. That's the teaching of the criminal history, both the criminal history and the category, which are a good predictor of recidivism, and the crimes themselves, once one analyzes them, which I have done in detail.
>
> . . . .
>
> I do think a sentence above the Guidelines is necessary in this case. The Guidelines, what they suggest through the criminal history are only one part of that. They suggest the need to protect the public. But the nature of the offense, the loaded pistol, the conduct all through this case are significant matters. . . . [The Guidelines] don't capture that. Mr. Tate has had every opportunity to lead a decent law abiding live [sic], has every ability to do it, has been trained to do it, but choose [sic] not to.
>
> In any event, because of the need to protect the public and balance any other factors I've stated, I'm going to sentence Mr. Tate to 120 months. . . . It is a sentence that I believe is fair, just, and reasonable under all of these circumstances.

The above excerpt, particularly when read in conjunction with the rest of the district court's detailed discussion of the § 3553(a) factors and of Mr. Tate's history and circumstances, demonstrates the court's commanding grasp of Tate's criminal history and the close attention it paid to the § 3553(a) factors and the policies underlying them.

We note, moreover, that the Supreme Court's recent ruling in *Gall* reinforces our conclusion that the district court did not act unreasonably by varying from the Guidelines in Tate's case, even though it imposed the statutory maximum sentence. In *Gall*, the Court explained that an appellate court reviewing a sentence for substantive reasonableness

> may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall v. United States*, 128 S. Ct. 586, 597 (2007).

The above discussion demonstrates that the district court appropriately weighed the § 3553(a) factors and determined that Tate was deserving of the statutory maximum sentence. On the record before us, we find no reason to question the district court's judgment in this regard, and therefore conclude that the sentence imposed was reasonable.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting. The majority rejects Lando V. Tate's ("Tate") claim that the district court violated Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure because the majority subjects Tate's claim to plain-error review on the ground that Tate did not sufficiently articulate his objection at sentencing. Maj. Op. at 5. Because I believe that Tate appropriately raised this issue before the district court and because our binding case law requires "literal compliance" with Rule 32's verification provision, I would vacate Tate's sentence and remand for re-sentencing. Accordingly, I respectfully dissent.

Rule 32(i)(1)(A) provides that at sentencing the court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." At the start of Tate's sentencing hearing, the following exchange occurred:

| | |
|---|---|
| The Court: | How about you, Mr. Tate, have you reviewed the Presentence Report in your case? |
| The Defendant: | No, sir. |
| The Court: | Well, have you had the opportunity to review the Presentence Report in your case? |
| The Defendant: | No, sir. |

J.A. at 233 (Sent. Hr'g Tr. 9/21/2006 at 3). The court then asked Tate's counsel whether Tate had been furnished with a copy of the report. When Tate's counsel said that Tate had received a copy, the court declared "[a]ll right. He has had the opportunity to review it." *Id.* The court then asked Tate's counsel if they had discussed the report, and counsel's response referred to discussions "months ago." *Id.*

The colloquy above should have clearly demonstrated to the district court that proceeding with the sentencing hearing would violate Rule 32(i)(1)(A)'s requirement that the court "verify that the defendant and the defendant's attorney have read and discussed the presentence report." Any discussions held "months ago" could not possibly have pertained to the revised presentence report, which had been completed only a short time prior to the hearing. Thus counsel effectively confirmed that he had not discussed the revised report with his client. The defendant himself twice stated he had not reviewed the report. The court should have briefly adjourned the hearing and given defendant and his counsel time to review the report to put the matter beyond any doubt.[1] The court's apparent "finding" that Tate "had the *opportunity* to review it" does not satisfy the Rule's command that the court "verify that the defendant and the defendant's attorney *have read and discussed*" the report. Fed. R. Crim. P. 32(i)(1)(A) (emphasis added).

The majority avoids confronting the district court's Rule 32(i)(1)(A) error by subjecting Tate's claim to plain-error review, stating that Tate did not sufficiently articulate his objection at sentencing. Maj. Op. at 5. I disagree. The district court asked Tate two questions about whether

---

[1] The record indicates that Tate has a history of non-cooperation, but "frustration with a less-than-cooperative defendant does not justify proceeding with sentencing in violation of Rule 32([c])(3)(A)'s requirements." *United States v. Cruse*, 59 F. App'x 72, 81 (6th Cir. 2003) (Prior to amendments taking effect in December 2002, Rule 32(i)(1)(A) was found at Rule 32(c)(3)(A)). Further, despite any frustration, the district court in fact conducted an otherwise very thorough and commendable hearing. Nonetheless, conducting an otherwise admirable hearing does not excuse the decision to proceed in the face of Tate's denial that he had read the presentence report and counsel's statement to the effect that he had not discussed the revised presentence report with his client.

he had reviewed or had an opportunity to review the report, and both times Tate replied "No, sir." Tate's answers adequately apprised the court that Tate had not read the report, which Rule 32(i)(1)(A) requires. To preserve a claim of error, a party need only "inform[] the court . . . [of] the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b). Tate's answers to the district court's questions informed the court that if the hearing proceeded, the court would have failed its verification obligation under Rule 32(i)(1)(A). Nothing more was required.

Because Tate's responses to the district court's questions sufficiently raised the issue of the hearing's compliance with Rule 32(i)(1)(A), and because our precedent is very clear that when a district court fails to fulfill its "duty to determine that [the defendant] and his attorney had read and discussed [the] presentence report" the court's "failure to do so requires resentencing," I would vacate Tate's sentence and remand for resentencing. *United States v. Mitchell*, 243 F.3d 953, 955 (6th Cir. 2001). Accordingly, I respectfully dissent.