**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0470n.06

**No. 08-5998**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 03, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ONNIE NESBITT, aka OMIE NESBITT, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | **O P I N I O N** |
| | ) | |

**Before:  GILMAN and WHITE, Circuit Judges; and WATSON District Judge.**[*]

**HELENE N. WHITE, Circuit Judge.**  Defendant Onnie Nesbitt (Nesbitt) appeals his 235-month sentence, imposed after he pleaded guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), asserting that it is both procedurally and substantively unreasonable. We disagree, and AFFIRM.

The presentence report (PSR) stated regarding the instant offense:

4.  At approximately 9:35 p.m. on May 22, 2003, Milan Police Department (MPD) Lt. Terry Jones was advised by the MPD dispatcher that the defendant, Omie (Onnie) Nesbitt, a previously convicted felon, had been at the home of his ex-wife, Evie Nesbitt . . . in violation of an Order of Protection.  Lt. Jones was further advised that Mr. Nesbitt was in possession of a firearm and that he had fired one or more shots inside the residence of Mrs. Nesbitt.  Since the shot was fired, the defendant had fled the aforementioned residence in a gray Mazda car driven by his brother, Kenneth Nesbitt.

_____

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

5. Shortly after receiving the aforementioned report, Lt. Jones observed a vehicle matching the description provided by Evie Nesbitt. . . . According to Lt. Jones['] report, Omie Nesbitt exited the suspect vehicle and started advancing towards him. Lt. Jones then drew his weapon and ordered the defendant to get on the ground. Mr. Nesbitt refused to comply . . . and instead began walking backwards, in the direction of a small patch of woods . . . A short time later, Mr. Nesbitt did return to the scene of the vehicle stop, at which time he was placed under arrest. A search of the defendant's person yielded two (2) live rounds of .38 caliber ammunition and one (1) fired .38 caliber shell casing. A search of the area into which Mr. Nesbitt had retreated on foot resulted in the discovery of two (2) firearms, . . . one (1) Arminius, Model HW38, .38 caliber revolver, . . . and one (1) Smith & Wesson, Model 10-8, .38 caliber revolver . . . .

6. [T]he defendant voluntarily admitted ownership of the firearms . . . .

7. Shortly after Mr. Nesbitt's arrest . . . . Evie Nesbitt provided a sworn statement . . . [and] advised that Omie Nesbitt, against whom she had recently taken out an Order of Protection, had entered her home, while holding a firearm . . . pointed the weapon . . . and held it on her, while repeatedly telling her that he was going to kill her that night. Mr. Nesbitt refused to let her leave the residence. At one point, Mr. Nesbitt did fire one (1) shot . . . not [] in the direction of Evie Nesbitt. . . .
. . . .
9. Eventually . . . Kenneth Nesbitt [knocked on the door], instructed Omie to let go of Evie and to leave the residence with him. Omie complied . . . As he left the residence, Omie informed Evie Nesbitt that he would be back. Moments after . . . Evie Nesbitt called 911, ultimately resulting in the above-described vehicle stop and arrest. [PSR prepared June 3, 2008, at 4-6.]

The PSR categorized Nesbitt as an armed career criminal, as defined in U.S.S.G. § 4B1.4, and calculated a total offense level of 31. PSR Worksheet C listed 17 prior convictions, resulting in 26 total criminal history points, which placed Nesbitt in criminal history category VI. Nesbitt's Guidelines range was 188 to 235 months of imprisonment.

The PSR stated that Nesbitt has an 8th grade education, and that he and his three siblings grew up in "an extremely dysfunctional home environment, which included frequent spouse abuse by their chronically-alcoholic father." Regarding his mental and emotional health, the PSR stated that

extensive court-ordered psychological evaluation at the Federal Bureau of Prisons (BOP) in July 2004 revealed that Nesbitt "was in the extremely low range of intellectual functioning as compared to his age peers, with an IQ of 51," and that he was diagnosed with schizoaffective disorder, alcohol abuse, and adult antisocial behavior. The PSR noted that before his current federal detention, Nesbitt was committed to a mental health institution five times between January 28, 2003 and January 20, 2004, and that during the first four of those hospitalizations he suffered "command auditory hallucinations, visual hallucinations, paranoid delusions, and suicidal and homicidal ideations."

The district court adopted the PSR's Guidelines range calculation and sentenced Nesbitt to 235 months' imprisonment, followed by 5 years of supervised release. The court declined defense counsel's request that it order Nesbitt be placed in a federal medical facility. This appeal ensued.

"[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" *Gall v. United States*, 552 U.S. 38, 46 (2007). "[C]ourts of appeals must review all sentences . . . under a deferential abuse-of-discretion standard." *Id.* at 41; *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). The review is two-tiered: we must review for both procedural and substantive error. *Gall*, 552 U.S. at 51.

In this circuit, a sentence that falls within the Guidelines enjoys "a rebuttable presumption of reasonableness." *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). Nevertheless, a sentencing court must still "explain to the parties and the reviewing court its reasons for imposing a particular sentence." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006).

## I. Procedural Reasonableness

Nesbitt asserts that his sentence is procedurally unreasonable because the district court either failed to consider his severe mental health issues, or failed to adequately explain how its consideration of the issue entered into its decision to sentence him at the high end of the Guidelines range.

Under *Gall*, procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . ." *Gall*, 552 U.S. at 51.

Nesbitt's position paper objecting to the PSR argued that his serious mental health conditions were factors warranting a departure:

> Given the fact that Defendant suffers from multiple serious mental health impairments as shown in the presentence report, a sentence within the recommended range is greater than necessary to address the statutory concerns. Defendant is in need of ongoing mental health treatment and should be housed in a mental health facility [hospital]. An extended incarceration by itself, will not address Defendant's serious ongoing medical needs. All it will do is warehouse Defendant for that period of time. It is unlikely that Defendant will be able to take advantage of nor benefit from the programs offered by the Bureau of Prisons, given his mental retardation.
> . . . .
> Defendant requests that he be recommended for placement in a Bureau of Prisons medical facility or hospital. [R. 84.]

Nonetheless, the Government is correct that Nesbitt's counsel did not object to the court's calculation of Nesbitt's sentence at the conclusion of the sentencing hearing, when the district court asked counsel whether there were "any other issues that have been raised that I've not yet ruled upon or any issues now presented that need ruling upon?" We thus review Nesbitt's claim of procedural unreasonableness for plain error. *See United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008)

No. 08-5998
*United States v. Nesbitt*

(en banc) (applying plain-error review because the defendant, after having been given opportunity to object, had not expressly objected to the adequacy of the court's explanation for the sentence at the sentencing hearing).

After hearing from counsel at sentencing, the district court noted its agreement with the probation officer's calculation of the Guidelines range, heard from Nesbitt, and then stated:

> THE COURT: Mr. Nesbitt, your case is an unusual one. What makes it unusual is that it's perhaps the longest pending criminal case this court has ever had. Your case started in 2003 and here we are in 2008 and we're still working on your case. That has been brought about as a result of numerous evaluations that we've had. You are probably the most evaluated defendant that this court has ever seen. I think there were at least three major evaluations. All those evaluations, Mr. Nesbitt, lead the court to conclude that you have some serious mental issues that have contributed to your life of crime. But the record before this court is that you are competent to proceed and were sane, or at least not insane, at the time of this offense. So that's the only evidence this court has to proceed on.
>
> In deciding your sentence I have to look at several issues. One . . . factor I have to look at is the guideline range, and the guidelines in your case suggest that I should sentence you somewhere to a term of imprisonment of 188 to 235 months. But that's not the only factor. I have to look at other factors.
>
> I have to look at the nature of this offense, and this was a serious crime, Mr. Nesbitt. It's fortunate that someone wasn't killed or seriously injured the night of this incident. Holding someone against their will in their house at gunpoint – or in a house at gunpoint is a serious crime.
>
> I also have to consider the history and characteristics of you, and you have a long and troubled history. You have 26 criminal history points, and I think that's among the top two or three that I have ever seen. You may be the highest criminal history that this court has dealt with. Perhaps you're not the top defendant, but you're near the top. In addition, you have some 19 convictions that didn't result in any criminal history points. So you've really got a lot more criminal history than 26 points, but 19 of them didn't result in any points. So you have a long, long history of criminal behavior.
>
> But what troubles me about yours is the nature of your criminal history. Now, a lot of your criminal history are disorderly conduct and public drunkenness and DUI,

but you have perhaps more assaults and batteries and aggravated offenses than this court has ever seen. You have been a very violent person. And it appears fortunate to me, Mr. Nesbitt, that someone hasn't been more seriously injured or killed as a result of all your assaultive behavior. You are a very dangerous person.

Now, it may be that you're dangerous when you aren't medicated, but when you're out on the streets, you obviously are not being medicated because you have perhaps the most . . . lengthy violent history this court has seen in years. I have to take that into account in deciding what your sentence should be.

I have to consider the availability of alternative sentences, and there are none in this case that would protect society and appropriately punish you other than incarceration.

I have to consider the need to give you a sentence similar to that received by other people who have committed various offenses with similar backgrounds. It's hard to do in your case, Mr. Nesbitt, because I haven't seen many people with a similar background. But I don't want to give you more time than they would get nor do I want to give you less time.

I have to consider the need to protect society. And quite frankly, Mr. Nesbitt, the only way I can protect society is to keep you away from society.

I have to send a message to other people that want to possess firearms after they're convicted of a felony, and the message is that there's a serious penalty attached to that.

I am also going to take into account the fact that you have had a long history of mental illness, and that will be considered in the sentence as well.

So taking all those factors into consideration, Mr. Nesbitt, given your long and unbroken chain of criminal activity, it's my conclusion that a sentence of 235 months in the custody of the Bureau of Prisons is the only thing that will protect society and appropriately punish you for this offense, which is enhanced by your long and violent history.

Upon release from prison you'll be placed on supervised release for five years.
. . . .
While you're on supervised release . . . [y]ou'll comply with . . . the following additional conditions:
. . . .

> That you participate in a program for mental health treatment as directed by the probation officer, including outpatient or inpatient, whatever is necessary.
>
> You'll comply with all treatment conditions and/or recommendations as set forth by the approved mental health treatment provider, to include strict adherence to any prescribed medication regimen.
> . . . .
> I'm not going to make a specific recommendation about a hospital environment. The BOP knows Mr. Nesbitt's background probably better than any inmate in the institutional set up. They have complete records on Mr. Nesbitt. The Bureau of Prisons will make the determination as to what type of incarceration or what level of supervision Mr. Nesbitt needs. [R. 94 at 42-47.]

As the above-quoted sentencing colloquy demonstrates, the district court acknowledged and clearly took into account Nesbitt's long history of mental illness, his multiple evaluations, and his need for medication, contrary to Nesbitt's contention that the court failed to consider his severe mental health issues. And the district court adequately explained how its consideration of those issues played into its decision to sentence him at the high end of the Guidelines range. In doing so, the district court noted that given Nesbitt's protracted and extensive criminal history – which included a number of assaultive and aggravated offenses – a sentence at the top of the Guidelines range was needed to assure society's protection, deter others, and appropriately punish him, while also noting that it was taking into account his long history of mental illness.

The district court fulfilled its obligation to " adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. Nesbitt has not shown that any procedural error, plain or otherwise, occurred in the district court's imposition of the 235-month within-the-Guidelines sentence, so his procedural unreasonableness claim fails.

## II. Substantive Reasonableness

Nesbitt also contends that his sentence is substantively unreasonable because the district court "failed to truly consider" his history and characteristics, and because the sentence, which will likely warehouse him for 24 1/2 years without access to needed mental health treatment, will not address his mental illness. He asserts that "a shorter sentence, or one that involved serious mental health treatment, would be a more adequate sentence," and that a 235-month sentence is greater than necessary to comply with the § 3553(a) factors.

If the district court's sentencing decision is procedurally sound, this court proceeds to consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *Gall*, 552 U.S. at 51. "A sentence may be substantively unreasonable where the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor.'" *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)). "The touchstone for our review [for substantive reasonableness] is whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008).

Nesbitt does not argue that the district court selected his sentence arbitrarily or based the sentence on impermissible factors. His argument as we understand it is that the court failed to give enough weight to his mental health history and characteristics, while giving too much weight to his criminal history.

Although the district court declined Nesbitt's counsel's request to order Nesbitt placed in a federal medical facility, it left the placement decision to the BOP because the BOP was most familiar

with Nesbitt's extensive mental health evaluations and treatment while in custody.  Nesbitt cites no authority to support the proposition that a sentence is substantively unreasonable by virtue of a district court declining to order placement in a medical facility.

After considering the parties' arguments, hearing from Nesbitt, and considering the PSR, the district court provided an analysis of the § 3553(a) factors, and set forth the reasoning behind its determination to sentence Nesbitt at the high end of the Guidelines range.  *See* colloquy, quoted *supra*.  As mentioned, the district court noted that given Nesbitt's protracted and extensive criminal history – which included a number of assaultive and aggravated offenses – a sentence at the top of the Guidelines range was needed to assure society's protection, deter others, and appropriately punish him, while also noting that it was taking into account his serious mental health problems.

"We do not require a rote recitation of § 3553(a) factors but rather an explanation of why the district chose the sentence it did."  *United States v. Smith*, 474 F.3d 888, 892 (6th Cir. 2007).  The district court more than adequately explained why it chose the 235-month sentence.

We conclude that the length of the sentence is reasonable in light of the § 3553(a) factors, *see Tate*, 516 F.3d at 469, and that Nesbitt's substantive unreasonableness claim thus fails.

For the foregoing reasons, we AFFIRM.