*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee,*

    *v.*

            No. 05-4425

CONRAD VERNON SMITH,

          *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 05-00115—George C. Smith, District Judge.

Argued: October 27, 2006

Decided and Filed: January 26, 2007

Before: KENNEDY and GIBBONS, Circuit Judges; ALDRICH, District Judge.[*]

---

## COUNSEL

**ARGUED:** Keith A. Yeazel, Columbus, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Keith A. Yeazel, Columbus, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

KENNEDY, J., delivered the opinion of the court, in which ALDRICH, D. J., joined. GIBBONS, J. (pp. 7-8), delivered a separate concurring opinion.

---

## OPINION

---

KENNEDY, Circuit Judge. Defendant Conrad Vernon Smith appeals his 57-month sentence, asserting that the sentence is unreasonable because the district judge, in calculating the sentence, (1) engaged in impermissible fact-finding and (2) failed to follow the methodology set forth in U.S.S.G § 4A1.3, which resulted in a sentence that was greater than was necessary to comply with the factors set forth in 18 U.S.C. § 3553(a). For the reasons set forth below we **AFFIRM** the sentence of the district court.

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

## BACKGROUND

Defendant Conrad Vernon Smith ("Smith") was pulled over by state police in Columbus, Ohio. When officers approached the vehicle he placed his hands outside the car and shouted, "I am not going to lie; I don't have a driver's license and there is a gun in the car." That gun was a loaded, sawed-off shotgun resting on the driver's side floorboard. The weapon was unregistered and the serial number had been obliterated. Smith was already a convicted felon.

A grand jury for the Southern District of Ohio returned a three-count indictment against Smith for (1) possession of an unregistered firearm, (2) possession of a firearm with an obliterated serial number, and (3) possession of a firearm as a convicted felon. Smith pleaded guilty to the third count in exchange for dismissal of counts one and two.

A presentence investigation report was prepared, which determined that Smith had an offense level of 12 and a criminal history category (CHC) of VI. It noted that the guideline range was 30-37 months. The parties did not object to the report.

The district court notified Smith that it was considering an upward departure based on U.S.S.G. § 4A1.3 because of his criminal history. Smith objected to an upward departure and requested a downward departure. At a sentencing hearing, the court overruled Smith's objections and departed upward from the sentencing guidelines recommendation to offense level 16, CHC VI. The new advisory range, the court found, was 46-57 months imprisonment. The court thus imposed a sentence of 57 months. This timely appeal followed.

## ANALYSIS

### I. The District Court's Findings of Fact

Smith argues that the district court exceeded its fact-finding prerogative by making "comparative and qualitative" findings; for example, Smith contests its finding that his criminal history was "egregious." Appellant's Br. at 12. He cites *United States v. Booker*, 543 U.S. 220, 244 (2005), and argues that "the nature of the conviction[,] beyond the mere fact of the conviction," must either be pleaded by the defendant or proved beyond a reasonable doubt.

We have previously noted that, "[c]onclusions about . . . prior convictions [are] treated the same before [and] after *Booker* . . .." *United States v. Richardson*, 437 F.3d 550, 555 (6th Cir. 2006). Our analysis of the sentencing treatment of prior convictions begins with *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), in which the Supreme Court distinguished between sentencing factors and separate criminal offenses. *See United States v. Burgin*, 388 F.3d 177, 183 (6th Cir. 2004); *see also United States v. Hollingsworth*, 414 F.3d 621, 623 (6th Cir. 2005) (following *Burgin* post-*Booker*). "The Supreme Court noted, among other things, that 'the relevant statutory subject matter is recidivism,' and recidivism '- the prior commission of a serious crime - is as typical a sentencing factor as one might imagine.'" *Burgin*, 388 F.3d at 183 (internal citations omitted).

After *Almendarez-Torres*, in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held "other than the fact of a prior criminal conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. As Smith properly notes in his brief, after *Apprendi*, the *Almendarez-Torres* exception is narrow. Appellant's Br. at 11. It is, however, wide enough to encompass the district court's finding here.

In *Burgin*, the district court found that "prior felonies were committed on different occasions." 388 F.3d at 186. The "different occasions" portion of that finding put the defendant under the reaches of the Armed Career Criminal Act, 18 U.S.C. § 924(e). As such, his sentence was

significantly enhanced. We concluded "that the 'different occasions' requirement . . . sufficiently comes within the exception in *Apprendi* for a prior conviction. . . . The 'different occasions' language involves the issue of recidivism, 'a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.'" *Burgin*, 388 at 186 (citing *Apprendi*, 530 U.S. at 488).

Post-*Booker*, we continue to rely on *Burgin*. In *United States v. Hollingsworth*, 414 F.3d at 623, Joshua Hollingsworth challenged the district court's finding that one of his prior convictions was for a "crime of violence," which increased his sentence. We rejected his argument and expanded our holding in *Burgin*. "[T]he violent nature of a previous offense 'is not a fact that pertains to the commission of the offense for which the defendant is presently charged,' but rather a fact that pertains to a previous offense." *Id.* at 623 (citing *Burgin*, 388 F.3d at 186).

Even more recently, we again found that a district judge's determination that a previous crime was a crime of violence was permissible under the Sixth Amendment post-*Booker*. In *United States v. Alford*, 436 F.3d 677, 681 (6th Cir. 2006), we explained that, "[a]s in *Burgin*, the district court in this instance was attempting to determine the scope of Alford's recidivism, that is, whether he was responsible for multiple instances of crimes of violence or whether this was only one single, isolated incident."

In the present case, the district judge examined Smith's criminal history and was within his prerogative to consider it "extensive and egregious" and to consider these characteristics in determining whether to deviate from the guidelines range. He considered the history in an attempt to discern the "likelihood that [Smith's] criminal lifestyle will continue." Dist. Ct. Op. and Order at 6. As such, the determination falls under a "traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Apprendi*, 530 U.S. at 488.

Furthermore, the district court's finding did not "increase[] the penalty for a crime beyond the prescribed statutory maximum . . .." *Apprendi*, 530 U.S. at 490. The court's finding increased the recommended, *advisory* range, but that range was still below the *statutory* maximum penalty. The district court did not act impermissibly.

## II. Reasonableness of the District Court's Sentence

We review sentences for reasonableness. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). In doing so, we follow a well-trodden path. After *United States v. Booker*, 543 U.S. 220, (2005), district courts treat the Federal Sentencing Guidelines as advisory rather than mandatory. However, as a court of appeal, we still defer to these guidelines since they reflect "nearly two decades of considered judgment about the range of appropriate sentences," *United States v. Buchanan*, 449 F.3d 731, 736 (6th Cir. 2006) (Sutton, J., concurring), by attaching a rebuttable presumption to a sentence within the Guidelines recommended range. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). That presumption, however, does not imply a presumption *against* a sentence outside the range. *Collington*, 461 F.3d at 808. Even so, we give sentences outside the range a closer look. "And, like every court of appeals to consider the question, we take the view that when the district court independently chooses to vary from the advisory guidelines range (whether above or below it), we apply a form of proportionality review:" the greater the variance from the range, the more compelling the justification for variance must be. *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006). Therefore, when a sentence varies significantly from the guidelines range, "extraordinary circumstances" must "justify the full amount of the variance." *Id.* at 496-97.

The district court below found that the offense level, in light of Smith's criminal history, was inadequate. Smith contests this upward departure. In this case, therefore, we approach the question

of reasonableness in two ways. First, if we find that the district court correctly computed the guideline range in its upward departure in light of Smith's "extensive and egregious" criminal history, we will treat the sentence as within the guidelines range and therefore presume it was reasonable. We must still subject the sentence to review, but as noted above, that review is less exacting. If, however, we find that the district court was not justified in its upward departure, and that the advisory range was therefore not properly calculated, we will not attach a presumption of reasonableness to it and approach the levied sentence with more skepticism.

This brief analysis should reveal an obvious conclusion: our review of a district court's upward departure to a higher offense level should mirror our analysis of its variance from the guidelines range. Since a district court can employ either and arrive at the same result, we should review both methods with the same scrutiny.

Prior to *Booker*, we employed a three-step approach in our review of upward departures under U.S.S.G. § 4A1.3:

> The first step is a question of law regarding whether the circumstances of the case are sufficiently unusual to justify departure. Step two involves a determination as to whether there is an actual factual basis justifying the departure. Here, the standard is whether the determination made involves clear error. ... The third step is that, once the Court has assured itself that the sentencing court considered circumstances appropriate to the departure, the degree of departure must be measured by a standard of reasonableness on appeal.

*United States v. Joan*, 883 F.2d 491, 494-96 (6th Cir. 1989). The Seventh Circuit has employed its similar pre-*Booker* § 4A1.3 case law in attempting to determine whether a sentence was reasonable. *United States v. Castro-Juarez*, 425 F.3d 430 (7th Cir. 2005). However, it did so "with the caveat that the question before [it] is ultimately the reasonableness of the sentence the district court imposed, not the court's application of a guideline authorizing an upward departure." *Id.* at 434. Like the litigants before our sister circuit in *Castro-Juarez*, both parties before us have provided us with their analysis of the case under our § 4A1.3 jurisprudence.

Smith concedes that the first two steps are met; that is, his criminal history exceeded that anticipated by the guidelines range and the convictions making up that history did, in fact, occur. Appellant's Br. at 17. He contests the last step, arguing that the upward departure was unreasonable. He would prefer an approach more mechanical than that the district court took. CHCs III, IV, and V each have a range of 3 criminal history points. That is, CHC III ranges from 4-6 points, CHC IV from 7-9, and CHC V from 10-12. CHC VI consists of points 13 and greater. Smith would have us continue this incremental method by adding an offense level for every three points in excess of 12. That is, add an offense level at 16 criminal history points, 19, 22 and so on.

Such a mechanistic approach, however, seems to us to be antithetical to our post-*Booker* approach to reviewing sentences, which emphasizes flexibility and discretion of district judges. In *Collington*, for example, we stated, "There is no mathematical percentage or formula that defines what reasonableness is. Appellate review simply cannot be reduced to such cold calculations. It is those very calculations that *Booker* and its progeny attempted to remove from the federal sentencing process." *Id.* Therefore, it is here that we will incorporate our post-*Booker* jurisprudence to our review of upward departures under § 4A1.3.

"We have now split our reasonableness review into two inquiries: procedural reasonableness and substantive reasonableness." *Collington*, 461 F.3d at 808. Procedural reasonableness requires a sentencing judge to "consider" the factors outlined in 18 U.S.C. § 3553(a). *Id.* at 7. The purpose of procedural reasonableness is to enable appellate review, so we require the district judge to explain

the factors that justify the sentence imposed. *United States v. James Williams*, 432 F.3d 621, 623 (6th Cir. 2005). However, this standard does not require that a judge be an automaton, listing inapposite factors by rote. It is enough to explain why this defendant is different from most.

A sentence will fail to be substantively reasonable if "the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor.'" *Collington*, 461 F.3d at 808 (citing *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)).

Again, we note that the standards for determining whether an upward departure to another offense level is appropriate are similar to those standards we use to judge the procedural and substantive reasonableness of a variance from any guidelines range. Procedural reasonableness can be equated to the first two steps outlined in *Joan*. First, a district court must explain the reasons justifying a departure and, second, evidence of those reasons must appear in the record. Such explanation allows meaningful appellate review. Third, substantive reasonableness - or what *Joan* called simply "reasonableness" - must govern the sentence imposed. The punishment must fit the crime.

In this case, the district court not only explained the reasons it was departing upward but it also provided an analysis of the § 3553(a) factors. It examined each of the prior convictions on Smith's record. It concluded, based on this review, that Smith "has a history of drug abuse, possessing dangerous firearms, and acts of violence against women." Dist. Ct. Op. at 5. It explained that it chose the sentence it did because Smith "has shown utter disregard for the law throughout the course of his life." *Id.* at 7. It recognized that the sentence would keep Smith off the street and that that alone was a benefit to the safety of the community. In considering all of the above, the court recognized Smith's objections and provided explanation of why it was rejecting them. Further, it provided a section explaining why the downward departure Smith requested was not granted.

We do not require a rote recitation of § 3553(a) factors but rather an explanation of why the district court chose the sentence it did. The court below examined many of the § 3553(a) factors and attached to them a not unreasonable weight. We conclude that it was within its discretion to impose the sentence it did.

### III. Sufficiency and Necessity of the Sentence

Finally, Smith argues that the sentence is likely to create unwarranted disparities because he is not eligible to participate in the Residential Drug Treatment Program (RDAP). In 18 U.S.C. § 3621(e)(2)(B), Congress gave the Bureau of Prisons (BOP) the authority to reduce prisoners' sentences by up to 1-year if and when they completed RDAP. However, Congress excepted violent criminals. According to Smith, the BOP expanded the legislative disqualification for violent criminals to include felons in possession of a firearm. Essentially, Smith argues that his ineligibility puts him on unequal footing with regard to other nonviolent criminals.

We reject this argument for the same reasons as the court below: the Congressional incentive was (a) not automatic and (b) not forward looking. A defendant's eligibility for the RDAP is contingent on approval by the BOP. Even if a defendant completes the program, the BOP does not have to reduce the sentence. 18 U.S.C. § 3621(e)(2)(B). Therefore, sentence disparity of the type Smith envisions is inherent in the legislative program. Some prisoners will get the reduction, while others, similarly situated before entering prison, will not. We cannot therefore conclude that the disparity is unwarranted.

In addition, the reduction of the prisoner's sentence is also structured as an incentive. To reduce the sentence before the defendant even attempts to enroll, based on the assumption that he would both enroll in and complete the program if allowed, provides no incentive to obtain treatment.

## CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is **AFFIRMED**.

---

**CONCURRENCE**

---

JULIA SMITH GIBBONS, Circuit Judge, concurring.  I concur in the majority opinion's disposition of this case but write separately to make two points.

First, in my view, Part I of the opinion treats defendant's plainly meritless argument that the district court engaged in inappropriate fact-finding as one worthy of substantial analysis and thus glosses over  the exact nature of the argument.  Defendant's argument is that the district court's comments that his criminal history was "extensive and egregious" and that there was a "likelihood that defendant's criminal lifestyle will continue" amounted to improper judicial fact-finding because the court went beyond merely finding the existence of defendant's criminal convictions.  While I find it difficult to accept defendant's characterization of the district court's observations as findings of fact,[1] I will assume that he is correct for purposes of addressing this issue.  The problem with defendant's argument is that the district court's ability to find facts post-*Booker* is not limited to a determination of prior convictions, and the district court's going beyond the fact of conviction poses no Sixth Amendment problem whatever in an advisory guideline system.  *Booker*, 543 U.S. at 233; *see also United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005) (rejecting defendants' argument that the district court was without power to make factual determinations regarding the amount of tax loss or whether defendants obstructed justice in calculating the recommended guidelines range for defendants' convictions on charges of conspiracy to commit tax fraud and tax evasion and noting that *Booker* did not eliminate judicial fact-finding but rather freed district courts to sentence defendants outside of the now advisory guidelines range).  Thus, the easy answer to defendant's argument is that if the district court found facts other than prior convictions, it was clearly permissible to do so.  We need not work to place the court's comments within the definition of prior conviction of *Almendarez-Torres*, as the majority opinion does.[2]

Second, while I have no difficulty with the general analysis in Part II of the opinion, it fails to state explicitly the ultimate impact of its approach.  We deal here with an upward departure under § 4A1.3, which relates to the inadequacy of a defendant's criminal history category.  The advice to district courts in that policy statement section–where, as in this case, a defendant's criminal history category is VI–is to adjust the guideline range by moving down the sentencing table in Criminal History Category VI.  The result will be a new advisory guideline range, within which the defendant may be sentenced.  By contrast, the policy statements accompanying departures under § 5, Part K, of the advisory guidelines contemplate a process for departing that does not result in a new advisory range but rather a sentence outside the range.  Even in the § 5, Part K, departure situation, however, courts have often used the steps of the sentencing table as a guide and have explained the departure in terms of a particular number of steps.  Yet, the processes as conceptualized in the guideline policy statements do differ.

---

[1] In my view, these observations are part of the district court's legal conclusion to apply § 4A1.3.  The standard for upward departure under that section requires the court to conclude that the defendant's criminal history category substantially under-represents the seriousness of his criminal history or the likelihood that he will commit other crimes. In its comments, the district court was clearly concluding that both prongs of the standard were met.  The comment about recidivism is an explicit determination as to the latter prong, while the "extensive and egregious" remark is a prelude to and a part of the determination that the initial prong was met.

[2] The majority may well be correct that the district court could make these findings even if restricted by *Almendarez-Torres*.  The government, citing *Alford*, 436 F.3d at 681, frames the principle in the following way: "[I]ssues implicit in the facts of other convictions ... need not be admitted by the defendant or proved to the jury, even under a mandatory system." (Appellee's Br. at 10.)

The majority opinion concludes that the pre-*Booker* standard first articulated in this circuit in *Joan* should continue to guide our analysis of upward departures[3] under § 4A1.3. Its reasoning in doing so is sound, for the utilization of the *Joan* standard is analogous to our continued use of pre-*Booker* standards to review guideline calculation decisions in other contexts. *See, e.g., United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005). But using the *Joan* approach introduces a wrinkle into the guideline calculation process under § 4A1.3 because the third step of the analysis required by *Joan* involves reasonableness review. The majority deals with the wrinkle by importing our post-*Booker* case law and standards into the *Joan* analysis. The effect of application of the framework created by the majority is this: to the extent a district court departs from a particular guideline range to arrive at a new range based on inadequacy of the criminal history category, that departure is not entitled to a presumption of reasonableness but is subject to full reasonableness review. The absence of any presumption of reasonableness for the extent of departure makes sense given the fact that a § 4A1.3 departure involves an exercise of discretion that is somewhat akin to departures under § 5, Part K. The district court's discretion is limited, however, by the language of § 4A1.3, and similarly, our reasonableness inquiry must focus on the degree of the departure and the extent to which the district court's chosen departure range is reasonable in light of the considerations relevant to § 4A1.3 departures.

Finally, it seems to me that once the departure under § 4A1.3 has been subject to *Joan* reasonableness review and the guideline range has otherwise been determined to be calculated accurately, the presumption of reasonableness should then attach to a sentence within the particular advisory guideline range that the court utilizes in sentencing a defendant. The majority opinion omits this step, but the omission makes no difference in the outcome in this case. Just as the departure to a higher guideline range was reasonable, so was the ultimate sentence, whether or not it was presumptively so. The omission does, however, obscure the fact that post-*Booker* reasonableness review should occur after the guideline range, with its included departure, has been determined. At this point, we look to consideration of § 3553(a) factors and apply the other principles that are part of post-*Booker* reasonableness review.

---

[3]The majority opinion at times uses the word "variance," which has been used both precisely and imprecisely post-*Booker* to refer to certain departures from the advisory guideline range. When used precisely, the term "variance" refers to departures based on § 3553(a) factors rather than departures under § 5, Part K, of the guidelines. *See United States v. Cousins*, 469 F.3d 572, 577 (6th Cir. 2006). The departure here is under § 4A1.3 and is the only departure of its type mentioned in the guidelines–*i.e.*, the only departure in which the court applies discretion under a given legal standard to arrive at a new range. The policy statement language uses the word "departure." We are thus dealing with a "variance" only if the word is used in a very general sense.