NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0505n.06
Filed: August 19, 2008

No. 07-5686

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOSEPH LEE, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |

Before:        KEITH and SUTTON, Circuit Judges; and ACKERMAN, District Judge.[*]

DAMON J. KEITH, Circuit Judge.  Defendant Joseph Lee appeals the sentence entered against him on May 31, 2007, by Chief Judge Jon Phipps McCalla of the United States District Court for the Western District of Tennessee.  Defendant argues that his sentence was procedurally unreasonable because, in calculating his sentence, the district court applied a method that denied him his right to an individualized sentencing determination.  Moreover, Defendant contends that the district court did not adequately address his request for a downward variance.  For the following reasons, we find Defendant's claims to be without merit.  However, because the district court calculated Defendant's sentence based on the incorrect Guidelines range, we **REMAND** the case for resentencing.

---

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey.

## I. FACTUAL BACKGROUND

On March 12, 2007, Defendant pled guilty to passing five counterfeited payroll checks of $633.42, totaling $3,167.10. The checks were made payable to Defendant, and were drawn from the account of Gerald Brooks d/b/a/ Future World Learning Center located in Memphis, Tennessee. All of the checks were cashed on July 20, 2004, at Bank of America branches in various Kroger's supermarkets in Tennessee.

In preparing Defendant's Presentence Report (PSR), the Probation Office found that Defendant qualified for an offense level of 6. In calculating this level, the Probation Office considered an incident that occurred on December 16, 2004, in which Defendant deposited a counterfeit commercial check in the amount of $2,500.83 into his account at Trustmark Bank. Shortly after depositing the check, Defendant withdrew $2,200 from his account before the check cleared and could be discovered as fraudulent. In adding the loss amount from this incident with that of the instant matter, the Probation Office determined that the total amount of loss for which Defendant was responsible was $6,301.35. Because Defendant was found responsible for a loss of more than $5,000, but less than $10,000, the Probation Office added 2 points to Defendant's PSR as a "Special Offense characteristic."[1] The PSR subtracted two points for acceptance of responsibility, however, leaving Defendant with an offense level of 6.

---

[1]The Probation Office erred in calculating the total loss. The PSR notes that it found a loss of $6,301.35 by multiplying six checks written for $633.42 and adding $2,500.83 (loss from related conduct). The report should have only multiplied $633.42 times 5, as Defendant only wrote 5 checks for that amount. Nevertheless, this miscalculation would not have prevented the adding of 2 extra points as a special offense because the total loss would still be more than $5,000, as it would be $5,667.93

The PSR also found that Defendant qualified for 30 criminal history points, which placed him in a criminal history category of VI (thirteen or more criminal history points establishes a criminal history category of VI). Defendant's criminal history score was extremely high because he had been convicted of various crimes throughout his adult life. Based on Defendant's offense level and criminal history, the PSR recommended a sentence ranging from 12 to 18 months.

After the issuance of the PSR, Defendant filed a sentencing memorandum objecting to its recommendation. Defendant argued that a downward departure pursuant to § 5K2.23 was appropriate because Defendant had served a state sentence on a related offense, the December 16th incident. Defendant claimed that the Sentencing Guidelines ("Guidelines") called for an adjustment of a sentence imposed if the defendant served prison time for an offense related to the instant offense, and that related offense was the basis for an increase in the offense level of the instant offense. Defendant also noted that he would object to an upward departure on the premise that his criminal history category does not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit other crimes. Defendant argued that his criminal history reflects more of a problem with an addiction to alcohol than a problem with following the law, as he committed many of his past crimes while intoxicated.

At Defendant's sentencing hearing, the district court judge began by adjusting the Guidelines downwards to account for the time Defendant served on the December 16th incident. The judge then applied a mathematical formula to account for the fact that Defendant had 30 criminal history points. The judge reasoned that such an adjustment was necessary to get a more accurate sentence because, in the Guidelines, category VI groups together all criminals with a criminal history score of 13 or

higher. Thus, a defendant with a criminal history category of VI and a criminal history score of 13

could be recommended the same sentence as that suggested for someone with a criminal history

category of VI but a criminal history score of 50. In addressing this problem, the district court judge

said the following:

> Normally, what I do on 30 criminal history points is I try to adjust to see where we should be in the guidelines using some logical method. The method that we usually use is that I take the points above 16, which in this case would be 14, divide that by three, which is the typical point increase after criminal history category II, and that would leave me with four, and two points left over. I would then adjust the range down, that is increase the range so that we would have gone from the calculated range, original calculated range of total offense level of VI, I would simply go down from the 15 to 21 months, I would go down one, two, three, four, 27-33 months as a way to recognize the fact that the defendant was not atypical, that is a person who minimally qualifies for a category VI criminal history, but rather somebody who, if the tables were extended, would be much higher. In this case, that's a cautious approach, it just allows us to adjust the range in order to reach a more logical calculation under the guidelines. I would then adjust that by two, so I would take 27 to 33 months, and I would go down two more, that would get from 21 to 27 months on the scale, and that's the way I think is logical in this case. It doesn't necessarily answer all of the questions under 18 U.S.C., Section 3553 regarding recidivism, protection of the community, but it does a better job than had I not adjusted the range. I think we can still talk about the others. They go more toward where a person might be placed in the range or whether someone should be outside the range, either above or below, but that's the calculation I think that makes more sense.

(J.A. 45-47.)

The sentencing range the judge ultimately found to be appropriate was 21 to 27 months.

After considering the 18 U.S.C. § 3553 factors, the judge sentenced Defendant to 27 months in

prison. Defendant now appeals his sentence.


## II. DISCUSSION

*A. The District Court's Calculation of Defendant's Sentence*

Defendant argues on appeal that the district judge's application of a mathematical formula to arrive at Defendant's sentence rendered his sentence procedurally unreasonable in violation of *United States v. Booker*, 543 U.S. 220 (2005). In support of his argument, Defendant cites the Sixth Circuit opinion in *United States v. Smith*, 474 F.3d 888 (6th Cir. 2007). In *Smith*, the defendant was given a sentence higher than the one recommended by the Guidelines because the district judge believed the suggested sentence did not accurately reflect the seriousness of the defendant's criminal history. On appeal, the defendant argued that his sentence was unreasonable because the district court's reasoning in sentencing him was based, in part, on qualitative findings concerning his criminal history. The defendant argued that a more calculated approach should have been taken in determining his sentence. Specifically, the defendant claimed that the court should have added an offense level for every three criminal history points in excess of 12 and sentenced him accordingly. The Court rejected the defendant's suggestion saying that "[s]uch a mechanistic approach . . . seems to us to be antithetical to our post-*Booker* approach to reviewing sentences, which emphasizes flexibility and discretion of district judges." *Id*. at 893. Following the court's findings in *Smith*, Defendant in the instant matter claims that the district court's method of using a formula to determine his sentence contradicted the mandate of *Booker*.

In *United States v. Booker*, the Supreme Court rendered the Sentencing Guidelines advisory for all criminal cases and gave district courts enhanced discretion in the sentencing of criminal defendants. *Booker,* 543 U.S. 220, 245 (2005). However, *Booker* requires that the sentence imposed by the district court be reasonable. *Id*. at 264. Our reasonableness review is two-fold,

requiring that a sentence be both procedurally and substantively reasonable. *United States v. Collington*, 461 F.3d 805, 808 (2006). A sentence may be procedurally unreasonable if it is marked by "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 128 S.Ct. 586, 597 (2007). "[A] sentence may be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007) (citation and quotation marks omitted). We review the reasonableness of a sentence using the abuse-of-discretion standard of review. *Gall*, 128 S.Ct. 586, 594 (2007).

Here, the district court properly determined Defendant's sentence. In assessing Defendant's sentence, the district court used the Guidelines in an advisory role and considered important subjective factors. Although the district court also applied a mathematical formula to the Guidelines to account for Defendant's extensive criminal history, it viewed the results of its calculations as advisory and non-binding. This is evident by the district judge's statements at the sentencing. For example, shortly after calculating Defendant's sentence, the district judge said:

> I'm going to go with the calculation that we discussed, I think it makes sense, I think it is appropriate in the case, which leaves us with a guideline range of 21 to 27 months, and that's just *advisory*. And I think it's good that it is advisory. It is a useful guideline.

(J.A. 50.) (emphasis added).

The judge's statements indicate that he is aware that he is not to give a sentence based purely on the Guidelines or some mathematical calculation, but that those formulations are to be viewed as advisory. Later, the judge reiterated his view on the advisory nature of the Guidelines and how he applied his own calculation in an effort to provide a more individualistic sentence. He stated:

> The guidelines are a comprehensive scheme to look at all the factors available that we should be looking at in the sentencing process, and it's a very important process. I think sometimes they're more helpful than others. In this case, they are helpful. I think by adjusting the guidelines we have come up with a range that is more appropriate.

(J.A. 60-61.)

The approach applied by the judge here is different than the one suggested by the defendant in *Smith*. Here, the results of the judge's calculation were to be viewed as a guide, and considered to be one factor among many in sentencing the defendant.[2] Whereas in *Smith*, the defendant wanted a sentence based purely on a mathematical formula. Thus, it was not the suggestion of using a mathematical formula to assist in finding an appropriate sentence that the panel in *Smith* found inapposite to federal law, but the request that the sentence be restricted to the results of that calculation. As the district judge in the instant matter viewed the sentencing range he applied as advisory, he did not violate the mandate of *Booker*.

### B. Defendant's Request for a Downward Variance

---

[2]The district judge discussed in detail how the 18 U.S.C. Section 3553 factors were also considered in sentencing Defendant. This will be discussed in the following pages.

Defendant's second argument is that the district court failed to address his request for a downward variance in his sentence. Defendant argued at sentencing that he was entitled to a reduction in his sentence because he had already served 23 months for the relevant conduct in the instant case, the December 16th incident. He requested the reduction as both a downward departure under U.S. Sentencing Commission Guidelines Manual §5K2.23, and a downward variance under 18 U.S.C. § 3553(a). Defendant claims that although the district court addressed the motion for downward departure, it failed to address his request for downward variance. In so doing, Defendant argues, the court failed to independently evaluate whether the sentence complied with 18 U.S.C. § 3553(a) as required by law. Consequently, Defendant claims, the sentence imposed was procedurally unreasonable.

As previously mentioned, once the district court has settled on a sentence that it deems to be appropriate, it then becomes the duty of the circuit court to review that sentence to ensure its reasonableness with an eye toward the § 3553(a) factors. *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). While the district court need not explicitly reference each of the § 3553(a) factors, there must be sufficient evidence in the record to affirmatively demonstrate the court's consideration of them. *United States v. Simmons*, 501 F.3d 620, 625 (6th Cir. 2007). A district court's failure to consider the § 3553(a) factors would result in a procedurally unreasonable sentencing determination, potentially requiring the Circuit to vacate and remand for resentencing. *See United States v. Conatser,* 514 F.3d 508, 524 (2008).

Although the district court did not explicitly address Defendant's request for a downward variance (apart from its discussion of the request for a downward variance departure on the same

ground), its exhaustive discussion of the § 3553(a) factors satisfied the procedural reasonableness

requirement imposed by *Booker*. The district court went through an extensive discussion of the §

3553(a) factors as they relate to Defendant. The court stated:

> Under 18 U.S.C., Section 3553, what we consider is offense conduct itself, and this is passing checks that were counterfeit checks at a Kroger.
>
> Now, the burden on society, as illustrated in the materials that were submitted by the officer with Kroger, is really significant. Every person that goes in that grocery store pays for the fact that you passed bad checks. It doesn't matter, it is a regressive tax, it's a tax on people who can least afford it . . . That makes it a serious crime. It is not just something that is a small economic crime, it's a real crime, hurts people.
>
> The second thing we consider is history and characteristics. There's no question, and your counsel is absolutley right, you have had lots of addiction problems. . . . So we have a person who has problems with drugs and alcohol and who haven't been able to solve it over a very long period of time. We also have 30 criminal history points, we have already adjusted for that. It is important we keep those in mind, however. That's not like somebody who has 16 or somebody who has 12 or somebody who has none, it's a huge difference. The court should be mindful of that. So we have got a problem.
>
> The next thing we have to consider is what's the sentence supposed to do. The sentence is supposed to do several things, it's supposed to provide just punishment, no more punishment than is necessary. . . . We try to do that. That's why the guidelines are very helpful, but it's not the only way to assess that.
>
> The second thing the sentence is supposed to do is the sentence is supposed to deter others from committing similar crimes. . . . Certainly, very minor sentences, a sentence of time served would have no deterrent value, and the government, I think, pointed that out, so we have to have a sentence, we should have a sentence of some commensuration.
>
> The sentence is also supposed to protect the public. It's a big issue in this case, protecting those folks who are least able to afford to buy groceries from Kroger, of having to pay an extra two to five cents on a can of baked beans is actually a worthwhile goal. We don't want anybody to have to do that, and I think the only way you can do that is locking an individual up for a long time if they're clearly committed to committing that type of crime. So that in and of itself calls for a period

of incarceration, not necessarily the longest one available, but a period of incarceration.

The next thing that we're supposed to do is we're supposed to attempt to make available those services that may assist you as you go forward in life, and we can do several things in that regard and should. We're going to provide for mental health counseling. . . . There's some other things we will impose, no financial obligations, new ones without approval of the probation officer. . . .We will also provide third party risk notification because there's a protection element there.

We're also supposed to – the next thing that we're supposed to consider on every occasion are the guidelines, the guideline range. . . . I think sometimes they're more helpful than others. In this case, they are helpful. I think by adjusting the guidelines we have come up with a range that is more appropriate. In this case, we're looking at 21 to 27 months.

We also need to impose a sentence that will not lead to unwarranted sentencing disparity, so that individuals in California or New York or Boston or Miami who commit the same type of crime and are in the same circumstances will receive approximately the same sentence. I always find that to be an interesting and challenging concept because nobody is really ever similarly situated to somebody else, but there are similarities that are critical, and I think that in this case, the long criminal history, the history of addiction, the fact that during periods of supervision, even under the watchful eye of the government, you were unable to conform lead us to using those characteristics, so that if someone else were in the same situation; they should be receiving a sentence of approximately the sentence that will be imposed in this case . . .

(J.A. 56-61.)

Although the district court did not explicitly discuss the § 3553(a) factors in relation to

Defendant's request for a variance, this extensive discussion of the § 3553(a) factors served the same

purpose. As such, the sentence was procedurally reasonable.

### *C. The Government's Request for Resentencing*

The Government argues, and Defendant agrees, that the instant matter should be remanded for resentencing because the district court inadvertently started at the wrong point on the Guidelines before adjusting Defendant's sentencing range. The district court began its starting point at 15 to 21 months, the range for a defendant with an offense level of 7 and a criminal history category of VI. The Government claims that the district court should have started the sentencing range at 12 to 18 months, the range for a criminal with an offense level of 6 and a criminal history category of VI. The effect of this mistake, the Government argues, is that the district court determined the proper sentencing range to be 21 to 27 months, when the Guidelines range should have been 18 to 24 months. The Government now contends that a remand is needed so the district court can clarify whether it intended to impose a 27 month sentence, notwithstanding that it started its calculation at the incorrect Guideline range.

Neither party objected to the misstated Guidelines range at the sentencing hearing. Thus, the question before us is whether the district court's mistake constituted plain error, entitling Defendant to be resentenced. "A 'plain error' is an error that is clear or obvious, and if it affects substantial rights, it may be noticed by an appellate court." *United States v. McIntosh*, 484 F.3d 832, 836 (6th Cir. 2007) (quoting *United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996). "We generally correct a plain forfeited error that affects substantial rights only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. (internal quotation marks omitted).

The district court clearly erred in starting its adjustment of Defendant's sentence at the wrong sentencing range. At sentencing, the district court discussed adjusting Defendant's sentence to more

accurately reflect his criminal history points.  The court indicated that, given Defendant's criminal

history category and offense level, it would start its adjustment by beginning at the sentencing range

suggested by the Guidelines and then proceed downward in the Guidelines until it found a sentencing

range it felt was more appropriate.  The court stated:

> I would . . . adjust the range down, that is increase the range so that we would have
> gone from the calculated range, original calculated range of total offense level of VI,
> I would simply go down from the 15 to 21 months, I would go down one, two, three,
> four, 27 to 33 months as a way to recognize the fact that the defendant was not
> atypical, that is a person who minimally qualifies for a category VI criminal history,
> but rather somebody who, if the tables were extended, would be much higher.

(J.A. 46.)

The problem with the court's calculation, however, is that the "original calculated range" for

Defendant was 12 to 18 months, not 15 to 21 months.  The Guidelines state that a defendant with

a criminal history of VI and an offense level of 6 should receive a sentence ranging between 12 and

18 months.  As Defendant had a criminal history of VI and an offense level of 6, the 12 to 18 month

range was where the district court should have begun its adjustment.  Instead, the judge mistakenly

started his calculation at a sentencing range of 15 to 21 months, the range the Guidelines suggest for

a defendant with a criminal history category of VI and an offense level of 7.  Thus, the district court

clearly erred in calculating Defendant's sentence.

Moreover,  the district court's error affected Defendant's substantial rights.  Given that the

district court's starting point was incorrect, it is likely that Defendant's overall sentence is incorrect

as well.  Thus, it is possible that Defendant was sentenced to prison for a longer time period than the

district court had intended.  As such an action would clearly affect Defendant's "substantial right"

to be sentenced correctly to a reasonable sentence, the district court's plain error should be corrected on remand. *See, e.g.*, *United States v. Story*, 503 F.3d 436, 441 (6th Cir. 2007) (remanding case for resentencing because the district court started at the wrong sentencing range in determining the defendant's sentence); *United States v. Duckro*, 466 F.3d 438, 446 (6th Cir. 2006) ("[W]here a district court makes a mistake in calculating a guideline range for purposes of determining a sentence under section 3553(a), we are required to remand for resentencing unless we are certain that any such error was harmless-i.e., any such error did not affect the district court's selection of the sentence imposed." (internal quotation marks omitted)); *United States v. Buchanan*, 449 F.3d 731, 738-39 (6th Cir. 2006) (stating that one of the "procedural requirements of a reasonable sentence" is that the judge calculate the guidelines sentencing range correctly).

### III. CONCLUSION

For the aforementioned reasons, we **VACATE** Defendant's sentence and **REMAND** for resentencing. The remand is limited to determining whether the district court intended to sentence Defendant to 27 months in prison, notwithstanding that it started its calculation on the incorrrect Guidelines range.