NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0581n.06

No. 09-4298

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 18, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| ANTHONY D. DAVIS, | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellant. | ) | |

BEFORE:  WHITE and STRANCH, Circuit Judges; and COHN, District Judge.[*]

**AVERN COHN, District Judge**.  This is a criminal case.  Defendant-Appellant Anthony Davis ("Davis") appeals from a custodial sentence of 18 months imposed on him following the revocation of supervised release.  Davis argues that his sentence is unreasonable.  For the reasons that follow, we affirm.

**I.**

Davis was born on November 27, 1979, in Lima, Ohio.  He is a lifelong resident of the Lima area.  He has the equivalent of a high school education and no verifiable history of regular employment.

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

On December 14, 2004, Davis was arrested by local law enforcement on a drug trafficking charge after purchasing drugs from a confidential informant. A search of his person performed at the local jail revealed $1,300.00 in counterfeit United States currency, in denominations of fifty and one hundred dollars.

On March 2, 2005, Davis was charged with one count of possession of counterfeit federal reserve notes, in violation of 18 U.S.C. § 472. Davis was originally detained following his arraignment on April 27, 2005. On June 2, 2005, Davis was released on a $50,000.00 bond and to the third-party custody of his grandparents.

On July 7, 2005, Davis pleaded guilty to count one of the indictment. The plea agreement provided that his base offense level was 9. There was no agreement as to his criminal history, but the government agreed to a two-level reduction for acceptance of responsibility.

Meanwhile, on June 3, 2005, Davis was sentenced on the state drug charge to three years custody. He began serving his sentence on July 20, 2005.

A presentence investigation report ("PSR") was prepared in preparation for Davis's sentencing on the federal charge. The PSR details Davis's extensive criminal history, which began at age 16 with a truancy violation. Throughout his teenage years and into his twenties, Davis was charged with a variety of offenses in the Lima, Ohio criminal justice system ranging from misdemeanor traffic offenses, disorderly conduct, resisting arrest, and drug charges. His first drug charge came at age 18 amd resulted in a 12-month suspended sentence. His second charge came at age 22 for which he received one year in state custody.

2

For his third charge at age 25, which precipitated the counterfeiting charge, he received three years in state custody, as noted above. At the time the PSR was prepared, Davis had an outstanding misdemeanor warrant from 2002 from Indiana for misdemeanor traffic offenses.

The PSR calculated Davis's guidelines range as follows:

| | |
|---|---|
| Base Offense Level | 9 |
| Acceptance of Responsibility | -2 |
| Total Offense Level | 7 |
| Criminal History Category (18 points) | VI |

This produced a guidelines range of 15 to 21 months.

On January 23, 2006, the district court sentenced Davis to six months imprisonment, followed by three years supervised release. His federal sentence was to run consecutive to his state sentence.

Following his release from state and federal custody, Davis was again arrested by Lima authorities. Specifically, Davis was arrested on June 6, 2009, and charged with menacing. On July 12, 2009, Davis was arrested and charged with assault. On July 28, 2009, Davis was charged with failure to comply and produce a license, after fleeing from a traffic stop. Davis pleaded guilty to some of the charges; other charges were dismissed.

On September 3, 2009, the probation office obtained an arrest warrant based on the state offenses. The probation office also reported that Davis was not in compliance with the terms of his supervised release because he failed to obtain employment and pay his special assessment.

On September 25, 2009, Davis appeared on the warrant. He waived a preliminary hearing. The district court then set the matter for a final revocation hearing, which was held on October 19, 2009. At the hearing, the details of which will be discussed below, the district court imposed an 18-month sentence with no additional period of supervised release. This sentence was an upward departure[1] of four months from the guidelines range of 8 to 14 months based on his violations.

## II.

### A.

Ordinarily, this court reviews sentences imposed following revocation of supervised release under the same deferential abuse of discretion standard that applies to post-conviction sentences. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). Under this standard of review, "we may overturn a sentence only if it is procedurally or substantively unreasonable." *United States v. Kontrol*, 554 F.3d 1089, 1092 (6th Cir. 2009). Here, however, the plain-error standard of review applies to Davis's procedural

---

[1] It is unclear whether the district court intended the sentence to be a "departure" or a "variance," as the district court stated that "I'll depart upward by four months" and then stated "I am varying rather than departing upward." (R. 46, Transcript of Revocation Hearing at p. 15). Whether the sentence is denominated a departure or a variance is not materially relevant. This court has explained that "[o]ur analysis is the same regardless of whether the sentence enhancement constitutes a Guidelines departure or a § 3553(a) variance." *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008); *see United States v. Herrera–Zuniga*, 571 F.3d 568, 586–88 (6th Cir. 2009) (explaining that a deviation from an advisory guidelines range may be based on a departure or a variance, and an adequate explanation is required in either case). To be consistent, we refer to Davis's sentence as a departure.

reasonableness argument because he failed to raise his procedural objection after the district court asked for any objections at the conclusion of sentencing. (R. 46, Transcript of Revocation Hearing at p. 20). *See United States v. Vonner,* 516 F.3d 382, 386 (6th Cir. 2008) (en banc); *United States v. Bostic*, 371 F.3d 865, 871-73 (6th Cir. 2004). "To establish plain error, a defendant must show the following: '(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings.'" *United States v. Baker*, 559 F.3d 443, 454 (6th Cir. 2009) (quoting *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)).

**B.**

**1.**

A sentence is procedurally unreasonable if the district court "commit[s][a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).

Davis does not argue that the district court improperly calculated the applicable guidelines range,[2] failed to consider the appropriate factors,[3] or based the sentence on erroneous facts. Rather, Davis contends that his sentence is unreasonable because the district court improperly upwardly departed from the guidelines range.[4]

When imposing a procedurally reasonable sentence, the district court must "adequately explain the chosen sentence—including an explanation for *any deviation* from the Guidelines range." *Gall*, 552 U.S. at 51 (emphasis added). "First, a district court must explain the reasons justifying a departure, and, second, evidence of those reasons must appear in the record. Such explanation allows meaningful appellate review." *United States v. Smith*, 474 F.3d 888, 894 (6th Cir. 2007), *abrogated on other grounds by Gall*, 552 U.S. 38.

When a district court imposes a sentence outside the guidelines range, the district court must "consider the extent of the deviation and ensure that the justification is

---

[2]As explained in the government's brief, under U.S.S.G. § 7B1.4(a), Davis's guidelines range for revocation of supervised release was 8 to 14 months. The range was based on the most serious violation alleged being a Grade C violation, U.S.S.G. § 7B1.1(a)(3), and Davis having a criminal history category of VI. U.S.S.G. § 7B1.4, Application Note 1. Moreover, all parties agreed that Davis faced a statutory maximum sentence of two years because his original offense of conviction was a Class C felony. *See* 18 U.S.C. § 3583(e)(3).

[3]A district court is required to consider the § 3553(a) factors in imposing sentence for violation of supervised release. *See* U.S. Sentencing Commission, *Federal Offenders Sentenced to Supervised Release* 45 (2010).

[4]Davis's challenge can be construed as a procedural reasonableness challenge. Admittedly, the distinction is not always clear. *See Herrera-Zuniga*, 571 F.3d at 579 ("[T]he procedural and substantive components of our reasonableness inquiry appear to overlap.") (internal quotation and citation omitted).

sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. The district court is statutorily required to state "the specific reason for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]" 18 U.S.C. § 3553(c)(2). A panel of this court recently addressed whether the requirement under § 3552(c)(2) to state the "specific reason" for varying or departing from the guidelines range applies to sentences for supervised release violations and revocations. The court held that it does. *United States v. Johnson*, 640 F.3d 195, 207 (6th Cir. 2011). Thus, the district court was required to give a reason for the four-month upward departure.

Here, the district court examined the § 3553(a) factors in sentencing Davis. Davis does not argue otherwise. Nor does he argue that the district court failed to give a reason for the variance. Rather, he contends that the district court's reason for the upward departure was improper. Davis argues that the district court gave him an additional four months only to make "him an example to his home community." He maintains that this reason is not justifiable, and if allowed to stand, judges will use this logic to upwardly depart in the absence of any proof that a longer sentence will deter any criminal behavior. A review of the transcript shows that this was not the district court's sole consideration. The district court's reasons for Davis's sentence are found in several of its statements.

After imposing the 18-month sentence, noting that it was departing upward by four months, the district court stated:

> I want to explain my reasons for [the departure] . . . as clearly as I can . . . .
> What is most troublesome to me is you have a series of law violations.
> Despite the fact that you -- you have basically a long, probably more than
> half your life --I can check when you started picking up juvenile convictions,

7

if any. At age 16. Well, truancy, age 16. Failure to comply with orders/signals of a police officer. Resisting arrest at age 16. Curfew violation at age 17. Age 18, possession of crack cocaine; you got a suspended sentence there, but that's the first drug conviction.

You were in violation of community control on at least two occasions. Found in violation. Your original 12-month custody was imposed. That's at age 18.

And then you start picking up driving violations, a series of those; two, four -- six. Resisting, another driving, disorderly conduct, another driving. Then at age 22, trafficking in crack cocaine, two counts. You got two one-year terms imposed consecutively.

In other words the Court eight years ago said to you, Look, I'm going to really jam you up, try to teach you a lesson, have you understand that there are consequences.

At age 25 you had another trafficking in cocaine with a driving violation in between. Also another driving violation after that. And now we have these offenses also which involve driving.

And among other things -- and I already indicated what is of uppermost concern in my mind are two things, perhaps three. One is at some point somehow, if it means swatting you hard, as I am today, to get your attention and make you realize that your prior record, it's not just tough getting a job, but it's real easy to get your way back into prison, no matter how minor or trivial things may be. You were found with some counterfeit money in your pocket. That's why you're here in the first place. But given your prior history, given the fact that you got to be well-known to the Lima authorities down there, and when you come out their eyes are going to be on you. They work closely with the federal government. If you're found anywhere near a gun, you're going to get a gun charge up here. They're very hard to beat.

(R. 46, Transcript of Revocation Hearing at p. 15-17).

After explaining that a gun charge would result in Davis facing a mandatory minimum sentence, the district court further stated:

And nothing else seems to have worked with you to get -- truly get your attention. You've got to dot every I right above the middle of the I, and you've got to cross every T straight and evenly on both sides of the line.

8

That's not the attitude and response that I see in these violations, especially with the eluding. That really troubles me, that mindset that I can do what I want. I'm going to do everything I can to get away from the law rather than comply with the law. So that's reason number one. Nothing else has seemed to have worked to the point where you understand the courts mean business, especially federal courts.

Then secondly as a public deterrence. Candidly, I want to send a message down there. I want the people who know you to realize what's happening to you. I want you to let them know that you're astonished that you got 18 months for, quote, something like this. But this Court with this probation officer has to continue to work down there. And people have to understand when they're in federal court and when they're convicted of a federal crime, no more white chips, no more red chips, nothing but blue chips on the table. And the judges up here will go out of their way to work with people, work with their probation officer. But if they're not, then it's time to discard. I don't like to do that. But there comes a time when I think you have to.

And finally, there's the incapacitation that you're simply not going to be around down there to create further problems for the authorities and the community.

(*Id*. at p. 18-19).

The district court gave no less than three reasons for the departure: (1) Davis's extensive criminal history and repeated criminal activity; (2) public deterrence; and (3) the utility in keeping him off the streets for an appreciable period. The district court's comments evince clear reasons for the departure, beyond simply sending a message to the Lima, Ohio community. Davis's sentence is therefore not procedurally unreasonable, measured by either an abuse of discretion or plain error standard of review.

**2.**

To the extent Davis argues that his sentence is substantively unreasonable, this argument fails. In reviewing for substantive reasonableness, this court must consider the

sentence imposed in light of "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. For sentences within the guidelines range, this court may apply a rebuttable presumption of reasonableness; but may not apply a presumption of unreasonableness to sentences outside the guidelines range. *Id.*; *Bolds*, 511 F.3d at 581. "[We] may consider the extent of the deviation," when reviewing for substantive reasonableness, "but [we] must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id*.

Davis's guidelines range for the original offense was 15 to 21 months. In a showing of leniency, the district court imposed a below guidelines sentence of six months. Davis violated the terms of his supervised release shortly after his release from custody and returned to his pattern of criminal activity. His guidelines range for the supervised release violation was 8 to 15 months. The four-month upward departure, which resulted in a sentence *within* the guidelines range for the original offense, is not substantively unreasonable. Davis's continued participation to engage in criminal behavior and what appeared to the district court to be a cavalier attitude about his activity justify the sentence imposed.

## III.

For the reasons stated above, Davis's sentence is AFFIRMED.

10